UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No.  1:21-CR-10354-WGY |
| v. ) | |
| ) | |
| ) | |
| KEIARRI DYETTE ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the defendant, Keiarri Dyette, before this Honorable Court and respectfully submits the following memorandum in support of his request that this Court sentence him to 37 months to be followed by three years of supervised release. Mr. Dyette is committed to taking care of his mental health and looks forward to rejoining the workforce as a productive member of society.  A sentence of 37 months is sufficient but not greater than necessary to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

## Background

Mr. Dyette, having started down a dangerous path, has recognized the wrongfulness of his conduct and the benefits and joy that a law-abiding productive lifestyle can bring, and is committed to maintaining one for himself, his family, and his community.

Mr. Keiarri Dyette, born in Boston in 1997, was raised by his mother and stepfather, William Utley.  (PSR ¶ 55).  Mr. Utley was abusive, however, and Mr. Dyette severed ties with Mr. Utley when he was twelve years old.  (PSR ¶ 55).  His

mother separated from Mr. Utley, and unfortunately, she then lost her job and soon lost her housing voucher as a result of a new relationship. (PSR ¶ 55). Therefore, Mr. Dyette spent years living in various shelters, and having to take a bus from the shelter to school. (PSR ¶ 55).

Mr. Dyette withdrew from high school during his senior year. (PSR ¶ 65). This was in part due to bullying as a result of him having to wear the same clothes each day, and the effects the housing instability had on him. A short time later, around age 19, Mr. Dyette was shot in the leg. (PSR ¶ 59, 60). Mr. Dyette experienced significant trauma in his life from loss of friends to gun and gang violence and drug addiction. (PSR ¶ 62). Mr. Dyette has since been diagnosed with PTSD, depression, and anxiety. (PSR ¶ 61).

Following his arrest in this case, Mr. Dyette was released on personal recognizance with pretrial conditions in July 2022. (PSR at 4 ¶ 1). While on pretrial release, he lived with his grandmother and worked at Autozone as a hub driver. He recognized what a privilege it was to have been granted release while the prosecution and sentencing was pending and made the most of that opportunity. (PSR ¶ 64). Not only did he comply with all of his pretrial conditions, he dedicated himself to his personal growth. (PSR at 4 ¶ 4). For one, Mr. Dyette committed to improving his mental health, participating in treatment and programming at Safe and Successful Youth Initiative, participated in the ROCA program and saw a therapist at Boston Medical Center. (PSR ¶ 61). In October 2022, Mr. Dyette also entered into a romantic

relationship with Vany Cardoso, who lives in Boston and works in retail. (PSR ¶ 55-56). She is supportive of Mr. Dyette. (PSR ¶ 55).

Mr. Dyette began and continues participating in the four-year ROCA program. "Roca's mission is to be a relentless force in disrupting incarceration, poverty, and racism by engaging the young adults, police, and systems at the center of urban violence in relationships to address trauma, find hope, and drive change." (See Ex. D). ROCA "centers on establishing a transformational relationship with our young people and focusing on providing insight into how their thoughts and feelings affect their behaviors." (See Ex. D). ROCA also provides job training services, educational programs, and life skills classes, all "based in [ROCA's] version of cognitive behavioral therapy to disrupt impulsive thinking and encourage emotional literacy." (Ex. D). Through ROCA, Mr. Dyette participated in programming, including cognitive behavioral therapy and HiSet instruction. (See Ex. D). Through ROCA, he has taken three of the five tests towards his GED, and upon completion of all five tests, will obtain his HiSET Diploma.[1] Since entering custody in May, he has been diligently working on educational and treatment tablet programs, having completed 99 testing classes in math for Kahn academy, and 46 of the 50 lessons available through the Edovo program.

Upon release, Mr. Dyette looks forward to returning to work at Autozone and potentially pursuing education and employment in plumbing. He knows he has a

---

[1] At the time of this memorandum's drafting, ROCA are coordinating with the facility Mr. Dyette is held in to arrange to allow him to take the remaining two tests.

responsibility to himself, his family, and his community to repair the harm from his past actions and poor decisions. (Ex. A). He has found value in hard work at a job he enjoys and is challenged by and takes pride in it.

## Applicable Guidelines

Mr. Dyette pled guilty to Counts Two, Nine, and Sixteen of the Third Superseding Indictment, charging him with conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), and conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846.

In the plea agreement, the parties calculated applicable guidelines resulting in a total offense level of 23. The Probation Department calculated a total offense level of 21, (PSR ¶ 41), which is lower than parties had agreed upon in the plea agreement, but there is no objection to the Probation Department's calculation. With a criminal history score of zero, resulting in a Category I, (PSR ¶ 48), Mr. Dyette's guideline range is 37-46 months of incarceration. (PSR ¶ 48, 76).

## Recommended Sentence

Mr. Dyette asks this Court to impose an incarcerated sentence of 37 months to be followed by three years of supervised release. Such a sentence serves to punish Mr. Dyette for his wrongful conduct, while also recognizing the numerous mitigating factors present in Mr. Dyette's case, and the meaningful changes and achievements Mr. Dyette has made in the years he has been on pretrial release.

In sentencing, this Court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." See Gall v. United States, 552 U.S. 38, 52 (2007), quoting Koon v. United States, 518 U.S. 81, 113 (1996). The First Circuit has explained that sentencing "necessitates a case-by-case approach, the hallmark of which is flexibility." United States v. Prosperi. 686 F.3d 32, 42 (1st Cir. 2012) quoting United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008). "[O]nce the GSR is properly calculated, sentencing becomes a judgment call for the court, and the court may construct a sentence . . . based on a complex of factors whose interplay and precise weight cannot even be precisely described." Id. (citations and quotations omitted).

From a young age, Mr. Dyette experienced significant housing instability. His early childhood was spent in a home with a man who was abusive to his mother. Once his mother escaped that relationship, Mr. Dyette, his mother, and siblings spent years without consistent housing. During many periods, Mr. Dyette's mother would reside in women's shelters from which Mr. Dyette was excluded, so he would have to stay with other relatives. Instability was ever-present throughout his teenage years. These experiences likely contributed the host of conditions for which Mr. Dyette receives mental health treatment. He has been diagnosed as suffering from PTSD, Major Depression and Anxiety, and his treating clinician has reported that his symptoms include "hypervigilance, intrusive thoughts, dissociative reactions, diminished interest in activities, decreased appetite, sleep disturbance, and difficulty

with attention and concentration." (Ex. C). His current clinician has explained that "these symptoms have caused clinically significant impairment in social, occupational and other important areas of functioning." Id.

Mr. Dyette was thus a vulnerable and misguided teenager with poor self-esteem when he gravitated towards Cameron Street. Most of the men in Cameron Street were older, experienced criminals. They were welcoming and encouraging to him, and he was easy for them to influence. Mr. Dyette was a lost young man seeking dignity and pride in himself, and the Cameron Street members instilled those feelings in him.

Mr. Dyette acknowledges that at the time of his arrest, he was on a dangerous path. Had he not been arrested; his criminal conduct would likely have continued. He recognizes the likelihood that he would have died as a result of his criminal conduct. (See A). For Mr. Dyette, however, the structure he received on pre-trial release opened his eyes to the different path and his ability to make better decisions. (See Ex. A).

Mr. Dyette had no serious prior involvement with the criminal justice system. He was immediately embarrassed by the shame his arrest and the associated search of the family home brought upon his mother and family. He was determined to make it up to them. So, when he was given the opportunity to be released on conditions, he was committed to succeeding for his support system.

But while that may have been Mr. Dyette's initial motivation to follow his strict pre-trial release conditions, the conditions turned out to provide him with a structure

he desperately needed. As a result of these requirements, he lived away from Cameron Street at either his aunt or grandmother's home and obtained full time employment. He fully immersed himself into the programming available through ROCA and he has taken three of the five tests towards his GED. He has committed to his mental health treatment and ceased using marijuana.

Mr. Dyette's lifestyle prior to his arrest perhaps made him feel accepted and better about himself, but it did not bring him true pride. During his interview with the Probation Department for his presentence investigation report, Mr. Dyette reported how great he felt having quit marijuana and holding a job. He enjoys working full time and earning an honest living. (See also Ex. A). His family has expressed their pride in his efforts, and it is important to him that he continue to reward their support of him. He is simply happier living as he has been on conditions of release than he was beforehand, and values the structure he received on release. He has a belief in himself that he never had before.

He recognizes that he must be imprisoned for his conduct. But Mr. Dyette looks forward to his future. Mr. Dyette was arrested at a point where he was young enough and no so heavily involved in his criminal conduct to be able to separate himself from it. Through the numerous years he has been on pretrial release he demonstrated his capacity for growth and transformation, and he seeks this Court to impose a sentence that allows him to continue this path.

Mr. Dyette therefore submits that the recommended sentence of 37 months is sufficient but not greater than necessary to comply with the purposes of sentencing and satisfies the factors of 18 U.S.C. § 3553(a).

## Conclusion

For the reasons stated above, Mr. Dyette moves that this Court impose an incarcerated sentence of 37 months to be followed by three years of supervised release.

Respectfully submitted,

**Keiarri Dyette,**

by his attorney,

*/s/ Jason Benzaken*

Jason Benzaken, Esq.
Benzaken, Maguire, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 658869
*jbenzaken@bmswlaw.com*

Dated:  June 22, 2024

## Certificate of Service

I hereby certify that a copy of this motion has been served upon counsel for the United States by CM/ECF or email.

*/s/ Jason Benzaken*

Dated:  June 22, 2024